David W. Hittle, OSB No. 741427
E-mail: dhittle@dwhaal.com
3040 Commercial Street SE, Suite 200
Salem, OR 97302
Telephone: (503)371-3844
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

STAN SMITH,                          Civil Case No. 6:21-cv-1422

        Plaintiff,

v.                                   COMPLAINT
                                     (ERISA 29 U.S.C. §1001)

PITNEY BOWES, INC. LONG
TERM DISABILITY PLAN,

        Defendant.

Plaintiff alleges:

## INTRODUCTION

1

This action is brought by plaintiff pursuant to the
Employee Retirement Income Security Act of 1974, 29 U.S.C.
§1001, et seq. ("ERISA"). Plaintiff seeks to recover long
term disability ("LTD") benefits pursuant to the terms of a
long term disability plan entitled Pitney Bowes Inc. Long
Term Disability Plan (the "Plan"). Plaintiff also seeks

Page 1 COMPLAINT

his costs and attorney fees pursuant to 29 U.S.C.
§1132(e)(1) and (f), pre and post-judgment interest.

## JURISIDICTION AND VENUE

2

Jurisdiction is conferred on this court by ERISA, 29
U.S.C. §1132(e)(1) and (f), which gives the District Courts
jurisdiction to hear civil actions brought to recover
benefits due under the terms of an employee welfare benefit
plan.

3

Venue is proper in this District Court, pursuant to
ERISA, 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1381.

## THE PARTIES

4

Plaintiff is an individual residing in the state of
Oregon.

5

Pitney Bowes, Inc. is a corporation, doing business in
Oregon.

6

On or about April 8, 1985 plaintiff became employed by
Pitney Bowes, Inc., and after completing one month of
employment, became insured under the Plan.

7

The Plan is an employee welfare benefit plan
specifically covered under ERISA, 29 U.S.C. §1002(1) and 29
U.S.C. §1003(a).

8

The Welfare Plan Administrative Committee is the Plan
Administrator of the Plan, within the meaning of ERISA, 29
U.S.C. §1002(15)(A).

9

LTD benefits paid out come from the Plan's Trust,
which is funded in part by defendant and in part by
employee contributions.

10

The monthly disability income paid under the Plan is
set at 50% of the Plan participants monthly earnings,
however, a participant may elect to "buy-up" to a 66 2/3%
monthly disability income level. The participant pays a
monthly contribution to the trust if the participant elects
to buy-up to the higher monthly disability income level.
The buy-up contribution ceases once monthly disability
income commences.

11

On or about November 1993 plaintiff notified the
defendant of his election to buy-up to the higher 66 2/3%

Page 3   COMPLAINT

monthly disability income level.

12

On January 5, 1994, plaintiff became totally disabled as that term is defined in the Plan due to severe mental conditions.

13

The Plan requires a disabled participant to complete a Qualifying Period of 22 months of total disability during which monthly disability income is not paid. Plaintiff's Qualifying Period ended June 30, 1994.

14

On July 8, 1994 defendant notified plaintiff that he had been approved for monthly disability income starting July 1, 1994 in the amount of $1,574.88 which was calculated at the 50% rate. The letter did not inform plaintiff that he had a right to appeal the monthly disability income calculation or that there was a 180 day time limitation within which to file an appeal.

15

Between July 1, 1994 and October 27, 2020, plaintiff had multiple telephone conversations with, and sent letters to, defendant asserting his entitlement to monthly disability income at the rate of 66 2/3% of rate rather

than the 50% he was being paid. Defendant did not respond
to plaintiff's inquiries.

16

On September 12, 2007 defendant sent a letter to
plaintiff informing him that it had discovered an error in
his LTD monthly disability income payments dating back to
June 6, 1994 because his monthly disability income was
erroneously calculated to be $1,574.88 rather than
$1,641.00. Both amounts were based on the 50% rate. The
letter did not inform plaintiff that he had a right to
appeal the 50% LTD monthly benefit calculation or that
there was a 180 day time limitation within which to file
such an appeal.

17

On November 13, 2007 plaintiff sent a letter to
defendant asserting that his monthly disability income
should be calculated at the 66 2/3%. He included a copy of
his paycheck stubs showing a premium deduction for the 66
2/3% rate. Defendant did not respond to this letter.

18

On January 30, 2009 plaintiff sent a letter to
defendant regarding their telephone conversation and
several telephone messages he had left for defendant
requesting defendant advise him about what was being done

Page 5  COMPLAINT

about his monthly disability income being payable at the 66
2/3% rate. Defendant did not respond to this letter.

19

Defendant sent a letter to plaintiff on October 8,
2019 regarding a September 23, 2019 telephone conversation
with plaintiff about plaintiff's claim for monthly
disability income at the 66 2/3% rate. Defendant asserted
that plaintiff did not qualify for the higher rate and if
plaintiff wished to appeal the decision his written appeal
must be received by defendant within 180 days following
receipt of the letter. The letter did not mention the
contractual limitation period or statute of limitations.

20

Plaintiff sent a letter to the defendant on March 24,
2020, appealing the October 8, 2019 denial of his claim for
monthly disability income at the 66 2/3% rate.

21

On April 10, 2020 Defendant sent a letter to plaintiff
acknowledging receipt of plaintiff's March 24, 2020 "timely
appeal".

22

Defendant sent a letter to plaintiff on May 22, 2020
saying it could not address plaintiff's issue relating to

Page 6   COMPLAINT

his 66/23% buy-up because it did not have access to paper files located in the office due to COVID-19.

23

On October 27, 2020 defendant sent a letter to plaintiff in response to his appeal saying that plaintiff's claim for monthly disability income at the 66 2/3% rate was being denied because the 180 day time for filing a formal appeal began running July 8, 1994 when he was approved for Plan benefits at the 50% rate. Defendant also asserted that the appeal was time barred because plaintiff failed to file an ERISA claim in federal court within the requisite time period (six years). The letter stated that this was the final administrative action to be taken regarding Plaintiff's appeal.

24

On April 16, 2021 plaintiff sent a letter to defendant appealing the October 27, 2020 decision denying his claim for monthly disability income at the 66 2/3% rate.

25

On June 17, 2021 defendant sent a letter to plaintiff again denying plaintiff's claim for monthly disability income at the 66 2/3% rate. The letter also stated that and any litigation filed as a result of a benefit denial must be filed in federal court within twelve months of the final

adverse benefit determination which it stated was within twelve months of October 27, 2020.

26

Between July 1, 1994 and October 27, 2020, defendant never provided plaintiff a clear and continuing repudiation of his claim such that he could have reasonably believed the Plan had finally denied his claim concerning the calculation of his monthly disability benefits.

27

Between July 1, 1994 and October 27, 2020, defendant never informed plaintiff of his appeal rights under ERISA or his right to bring a legal action.

28

Between July 1, 1994 and October 27, 2020, defendant never informed plaintiff of either the 12 month contractual limitation, the applicable statute of limitations, or their effect on his claim.

29

Plaintiff has exhausted all of his administrative levels of review.

30

Defendant made all of the decisions regarding plaintiff's LTD claim including the calculation of the

monthly disability income rate and was a paying source thus creating an structural conflict of interest.

31

The denial of plaintiff's claim for monthly disability income calculated at 66 2/3% of his monthly earnings is contrary to the record, unsupported by the terms and conditions of the Plan and is erroneous.

## CLAIM FOR RELIEF

## Long Term Disability Benefits

## (Violation of ERISA)

32

Plaintiff realleges paragraphs 1 through 31 above.

33

Plaintiff has completed all administrative steps required pursuant to the Plan and under ERISA, including the administrative appeal of defendant's calculation of the monthly disability income rate pursuant to 29 U.S.C. §1133.

34

29 U.S.C. §1132(a)(1)(B) authorizes plaintiff to recover benefits due to him under the terms of the Plan, to enforce his rights under the terms of the Plan, and/or to clarify his rights in future benefits under the terms of the Plan.

35

Defendant has violated ERISA and continues to violate ERISA by miscalculating the rate of plaintiff's monthly disability income. 29 U.S.C. §1132(a)(1)(B).

36

Plaintiff has been damaged in the sum of $546.44 per month, which is the difference between 50% of his monthly earning and 66 2/3% of his monthly earning, for the period from July 1, 1994 to October 1, 2021 for a total sum $178,685.88 and continuing into the future until the monthly disability income is properly terminated under the terms of the Plan.

37

Plaintiff has incurred attorney fees and costs as a result of the miscalculation of plaintiff's monthly disability income which he is entitled to recover under the Plan pursuant to 29 U.S.C. §1132(g)(1).

38

Plaintiff has suffered damages in a definite and liquidated amount, and is entitled to pre-judgment and post-judgment interest on all amounts due and owing him from defendant.

WHEREFORE, plaintiff prays that he have and recover judgment in his favor and against defendant as follows:

1) A sum equal to $546.44 per month since July 1, 1994 through October 1, 2021 for a total sum of $178,685.88 and continuing into the future until such time as his monthly disability benefits are properly terminated under the terms of the policy;

2) His attorney fees and costs, pursuant to 29 U.S.C. §1132(g)(1); and

3) Pre and post-judgment interest.

Respectfully submitted,

David W. Hittle, OSB No.741427